IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| NELSON GOMES, individually, derivatively and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:14-00283-ODS |
| AMERICAN CENTURY COMPANIES, INC.; AMERICAN CENTURY INVESTMENT MANAGEMENT, INC.; JAMES E. STOWERS, JR.; JAMES E. STOWERS, III; JONATHAN S. THOMAS; THOMAS A. BROWN; ANDREA C. HALL; DONALD H. PRATT; GALE E. SAYERS; M. JEANNINE STRANDJORD; TIMOTHY S. WEBSTER; WILLIAM M. LYONS; ENRIQUE CHAN; MARK KOPINSKI; AND BRIAN BRADY, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| AMERICAN CENTURY WORLD MUTUAL FUNDS, INC., doing business as AMERICAN CENTURY INTERNATIONAL DISCOVERY FUND, | ) ) ) ) ) | |
| Nominal Defendant. | ) | |

**DEFENDANTS' SUGGESTIONS IN SUPPORT OF MOTION TO STAY ALL PROCEEDINGS PENDING COMMITTEE'S INVESTIGATION AND BOARD'S DETERMINATION REGARDING PLAINTIFF'S DEMAND**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. FACTS ................................................................................................................................ 2

    A. Plaintiffs' Derivative Complaint ............................................................................ 2

    B. The Seidl Matter .................................................................................................... 2

    C. The Procedural History of this Action ................................................................... 4

    D. A Committee Has Been Formed to Evaluate Plaintiff's Demand .......................... 6

    E. Plaintiff Has Refused to Agree to a Stay of Proceedings. ..................................... 6

III. ARGUMENT ...................................................................................................................... 6

    A. Maryland Law Governs Issues Related to ACWMF's Corporate Governance. ............................................................................................................ 6

    B. The Committee and Board Are Entitled to Manage this Derivative Action .......... 7

    C. Well-Established Law Requires that All Proceedings Be Stayed Pending the Committee's Investigation ................................................................................ 9

    D. Plaintiff Cannot Show the Extraordinary Circumstances Necessary to Overcome the Strong Presumption in Favor of a Stay. ........................................ 10

    E. The Stay Should Include a Stay of Discovery. .................................................... 12

    F. A Stay Will Benefit the Fund............................................................................... 12

    G. A Stay Until a September Status Conference Is Reasonable. ............................. 13

IV. CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbey v. Computer & Commc'ns Tech. Corp.,*
 457 A.2d 368 (Del. Ch. 1983) .......................................................................................9, 12, 13

*Boland Trane Assocs. v. Boland,*
 No. 273284-V, 2012 Md. Cir. Ct. LEXIS 2 (Md. Cir. Ct. Jun. 6, 2012) ..................................8

*Strougo ex rel. The Brazil Fund, Inc. v. Padegs,*
 986 F. Supp. 812 (S.D.N.Y. 1997) ..........................................................................................10

*Burks v. Lasker,*
 441 U.S. 471 (1979) ..................................................................................................................6

*Byers v. Baxter*,
 69 A.D.2d 343 (N.Y. App. Div. 1979) ...................................................................................11

*Charal Inv. Co., Inc. v. Rockefeller*,
 Civ. A. No. 14397, 1995 WL 684869, *3 (Del. Ch. Nov. 7, 1995) ........................................13

*Gaines v. Haughton*,
 645 F.2d 761 (9th Cir. 1981) ..................................................................................................11

*Mozes ex rel. Gen. Elec. Co. v. Welch*,
 638 F. Supp. 215 (D. Conn. 1986) ..........................................................................................11

*Allison ex rel. General Motors Corp. v. General Motors Corp.*,
 604 F. Supp. 1106 (D. Del. 1985) ...........................................................................................11

*Gomes v. Am. Century Cos.*,
 710 F.3d 811 (8th Cir. 2013) ....................................................................................................4

*Gomes v. Am. Century Cos.,*
 No. 09-cv-02153 (E.D. Cal. Dismissed Jan. 22, 2010) ........................................................4, 5

*Gomes v. Am. Century Cos.*,
 No. 4:10-cv-0083, 2012 U.S. Dist. LEXIS 187426 (W.D. Mo. Feb. 16, 2012) .......................4

*Hudson v. Prime Retail, Inc.*,
 No. 24-C-03-5806, 2004 WL 1982383 (Md. Cir. Ct. Apr. 1, 2004) ........................................7

*In re InfoUSA, Inc. Shareholders Litig.*,
 Civ. A. No. 1956, 2008 WL 762482 (Del. Ch. Mar. 17, 2008) ..........................................9, 11

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*,
  No. 05-cv-0841, 2005 WL 2989343 (D. Md. Nov. 3, 2005) ....................................................... 7

*Kamen v. Kemper Fin. Servs. Inc.*,
  500 U.S. 90 (1991) ................................................................................................................... 6

*Kaplan v. Wyatt*,
  484 A.2d 501 (Del. Ch. 1984) ......................................................................................... 9, 10, 13

*Katell v. Morgan Stanley Group, Inc.*,
  Civ. A. No. 12343, 1993 WL 390525 (Del. Ch. Sept. 27, 1993) ........................................... 9, 14

*Kramer v. Liberty Prop. Trust*,
  968 A.2d 120 (Md. 2009) ......................................................................................................... 7

*Moradi v. Adelson*,
  No. 2:11-cv-00490, 2012 WL 3687576 (D. Nev. Aug. 27, 2012) ...................................... 10, 11

*In re Oracle Corp. Derivative Litig.*,
  808 A.2d 1206 (Del. Ch. 2002) ....................................................................................... 9, 10, 13

*Pompeo v. Hefner*,
  Civ. A. Nos. 6806, 6872, 1983 WL 20284 (Del. Ch. Mar. 23, 1983) ................................... 9, 13

*Rudolph v. Cummins*,
  Civ. A. No. H-06-2671, 2007 WL 1189632 (S.D. Tex. Apr. 19, 2007) .................................. 10

*Seidl v. Am. Century Cos.*,
  427 F. App'x 35 (2d Cir. 2011) ............................................................................................... 3

*Seidl v. Am. Century Cos.*,
  713 F. Supp. 2d 249 (S.D.N.Y. 2010) .................................................................................. 3, 4

*Shenker v. Laureate Educ., Inc.*,
  983 A.2d 408 (Md. 2009) ........................................................................................................ 7

*Siedl v. Am. Century Cos.*,
  No. 4:10-cv-4152 (W.D. Mo.) ............................................................................................... 3, 4

*Silverstein v. Larson*,
  No. Civ.04-3450, 2005 WL 435241 (D. Minn. 2005) ............................................................ 13

*St. Clair Shores Gen. Employees Retirement Sys. v. Eibeler*,
  No. 06 Civ 688, 2006 WL 2849783 (S.D.N.Y. Oct. 4, 2006) ....................................... 9, 10, 14

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

*Sutherland v. Sutherland*,
   Civ. A. No. 2399, 2008 WL 571253 (Del. Ch. Feb. 14, 2008)..................................................12

*In re Take-Two Interactive Software, Inc. Derivative Litig.*,
   No. 1:06 Civ. 05279, 2007 WL 1875660 (S.D.N.Y. June 29, 2007).......................................10

*Werbowsky v. Collomb*,
   766 A.2d 123 (Md. 2001) ........................................................................................................8

*Zapata Corp. v. Maldonado,*
   430 A.2d 779 (Del. 1981) ......................................................................................................13

**Statutes**

Maryland General Corporation and Associations Code § 2–401(a)...........................................7, 8

**Other Authorities**

13 William Meade Fletcher, et al, Cyclopedia of the Law of Private Corporations, § 5941.10
   (1995 Rev. Vol.) .......................................................................................................................8

**I.     INTRODUCTION**

Nominal defendant American Century World Mutual Funds, Inc. ("ACWMF") and defendants American Century Companies, Inc. ("ACC"), American Century Investment Management, Inc. ("ACIM"), current and former directors of ACWMF or ACIM, and current and former executives and employees of ACIM (collectively, "Defendants"), by and through the undersigned counsel, hereby move for an order staying all proceedings in this action until a mid-September 2014 status conference.

Prior to filing this derivative action, Plaintiff Nelson Gomes made a litigation demand on ACWMF by service of a demand letter on its board of directors (the "Board"). The Board has appointed a committee (the "Committee") to evaluate that demand, and Defendants respectfully ask the Court to follow applicable Maryland and Delaware law by staying all proceedings until the Committee and the Board have made their respective determinations and have responded to Plaintiff.

Given that all claims asserted in Plaintiff's derivative complaint belong to the American Century International Discovery Fund (the "Fund") and that any recovery would go to the Fund, not to Plaintiff, the law requires that ACWMF be given the opportunity to control this litigation. After completing its investigation and evaluation of Plaintiff's demand, the Committee will make a recommendation to the Board, and the Board will then vote on whether it is in the best interests of the Fund to pursue Plaintiff's claims (collectively, this process will be referred to in this motion as the "Committee Process"). That process will take several months, and the law is clear that, absent any exceptional circumstances (which do not exist here), all proceedings should be stayed pending the Committee's investigation and the Board's vote. Stays in this circumstance are routinely granted given the widely accepted legal principle that it is the corporation itself that

1

has the initial preemptive opportunity to investigate derivative claims and to determine whether the derivative lawsuit should proceed (and, if so, then in what manner).

The Committee will need time to complete its investigation, and Defendants therefore respectfully requests that the Court stay all proceedings, including discovery, until a convenient date for the parties in September, at which time Defendants respectfully request that the Court schedule a status conference to assess the progress of the Committee's investigation.

## II. FACTS

### A. Plaintiffs' Derivative Complaint

On or about March 26, 2014, Plaintiff filed his derivative complaint ("Complaint" or "Compl.") against Defendants. (Compl. ¶¶ 36-55.) In the Complaint, Plaintiff alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as common law claims for breach of fiduciary duty, negligence, waste, and breach of contract. (Compl. ¶ 185-218.) Plaintiff alleges that by causing the Fund to purchase shares in BWin Interactive Entertainment AG ("BWin") and NETeller Plc ("NETeller")—companies that were publicly traded on the Vienna and London Stock Exchanges respectively—defendants caused ACWMF to become a RICO "enterprise." (Compl. ¶ 122.) To support this admittedly novel theory, Plaintiff argues that BWin and NETeller were "illegal gambling businesses" under 18 U.S.C. Section 1955 and that the mere ownership of publicly traded shares in such companies constitutes ownership of an "illegal gambling business" and is thus a violation of Section 1955, alleged to be a RICO predicate act. (Compl. ¶¶ 18, 32.) Plaintiff seeks compensatory damages, disgorgement of profits, punitive damages, and treble damages. (Compl., Prayer for Relief.)

### B. The *Seidl* Matter

Plaintiff's counsel has litigation pending in this Court asserting similar claims against nearly the same set of defendants in connection with a different American Century mutual fund.

2

*See Siedl v. Am. Century Cos.*, No. 4:10-cv-4152 (W.D. Mo. Complaint filed Jul. 15, 2010). The *Seidl* matter was originally filed in the Northern District of California, and then was re-filed in the Southern District of New York, where the court granted defendants' motion to dismiss for plaintiff's failure to make a litigation demand on the board of directors of American Century Mutual Funds, Inc. ("ACMF"). *Seidl v. Am. Century Cos.*, 713 F. Supp. 2d 249 (S.D.N.Y. 2010). After Plaintiff appealed, the Second Circuit Court of Appeals upheld the lower court's ruling and required plaintiff to make a demand. *Seidl v. Am. Century Cos.*, 427 F. App'x 35 (2d Cir. 2011). After making her demand, plaintiff re-filed in the Western District of Missouri. (*Seidl v. Am. Century Cos.*, No. 4:10-cv-4152, W.D. Mo.) Notably, plaintiff in that case agreed to stay the *Seidl* action to permit the committee appointed by the board of directors to investigate her litigation demands. (*See* Unopposed Motion to Stay, *Seidl*, 4:10-cv-4152, ECF No. 17; Order Granting Motion to Stay, *Seidl*, 4:10-cv-4152, ECF No. 18; Joint Motion to Stay, *Seidl*, 4:10-cv-4152, ECF No. 22; Order Granting Motion to Stay, *Seidl*, 4:10-cv-4152, ECF No. 23.) After a thorough investigation, the *Seidl* committee recommended against bringing a lawsuit on behalf of the corporation, and—based on that recommendation—the board of directors refused plaintiff's demand. (Suggestions in Support of Motion to Dismiss at 4-5, *Seidl*, 4:10-cv-4152, ECF No. 44) Plaintiff's counsel in *Seidl* then re-filed her complaint in this Court in August 2011, and the parties are currently briefing summary judgment in that case. (Amended Complaint, *Seidl*, 4:10-cv-4152, ECF No. 26; Plaintiff's Motion for Summary Judgment, *Seidl*, 4:10-cv-4152, ECF No. 105; Defendants' Motion for Summary Judgment, *Seidl*, 4:10-cv-4152, ECF No. 107.)

### C. The Procedural History of this Action

This action was originally filed in the Eastern District of California. *See Gomes v. Am. Century Cos.,* No. 09-cv-02153 (E.D. Cal. Dismissed Jan. 22, 2010). After defendants made a motion to transfer venue of the action to the Southern District of New York to join the then-pending *Seidl* action, Plaintiff voluntarily dismissed the complaint and (apparently unhappy with the Southern District of New York's rulings) refiled it here. *See Gomes v. Am. Century Cos.*, No. 4:10-cv-0083, 2012 U.S. Dist. LEXIS 187426 (W.D. Mo. Feb. 16, 2012). On defendants' motions, this Court dismissed Plaintiff's claims. *Gomes,* 2012 U.S. Dist. LEXIS 187426. After Plaintiff appealed, the Eighth Circuit Court of Appeals upheld the decision on grounds that Plaintiff was required to make a litigation demand on ACWMF's Board, finding that such a demand would not be futile. *Gomes v. Am. Century Cos.*, 710 F.3d 811 (8th Cir. 2013).

Plaintiff made a litigation demand on the Board by letter dated April 16, 2013. (Decl. of Gordon C. Atkinson In Support of Mot. to Stay, "Atkinson Decl." ¶ 2; Decl. of James A. Olson In Support of Mot. to Stay, "Olson Decl." ¶ 2.) Because the outcome of the *Seidl* plaintiff's arguments regarding demand refusal could inform the parties as to similar arguments that may be made in this action, the parties began negotiating an agreement to defer any action on Plaintiff's proposed derivative claims (including any requirement that the Board take action with respect to the demand) and toll the running of the statute of limitations in mid-April 2013. (Atkinson Decl. ¶ 3.) On June 24, 2013, Defendants provided Plaintiff's counsel with a draft of such a tolling agreement. (*Id.* ¶ 5.) On June 25, 2013, Plaintiff's counsel proposed that—in addition to the tolling of time limitations—the parties should also agree that Plaintiff's demand in this action should be addressed by linking it to the outcome of the demand refusal issue in *Seidl* (the proposed "Tolling and Linkage Agreement"). (*Id.* ¶ 6.) In subsequent discussions, Plaintiff's

4

counsel made clear that Plaintiff would not enter into a tolling agreement without certain linkage provisions. The parties proceeded to negotiate to see if they could reach agreement on a Tolling and Linkage agreement. (*Id.*) During the period of these negotiations, the Board had refrained from forming a committee to investigate Plaintiff's demand because it was hopeful that the negotiations would produce an agreement under which the demand in Gomes would be addressed through a process that did not require an investigation. (Olson Decl. ¶ 3.)

Because of the number of defendants involved and disputes regarding the scope of the proposed Tolling and Linkage Agreement (that were ultimately unresolved), the parties continued to negotiate that agreement over many months. (Atkinson Decl. ¶ 7.) The parties exchanged further drafts of potential agreements on August 3, 2013, September 2, 2013, September 4, 2013, October 23, 2013, October 29, 2013, November 7, 2013, November 12, 2013, November 15, 2013, December 5, 2013, and December 17, 2013. (*Id.*) Further, Gordon Atkinson, lead counsel for ACIM, ACC, and certain of the officers and board members, was out on medical leave for nearly six months, thus making resolution of the differences of opinion regarding the scope of the proposed Tolling and Linkage Agreement very difficult. (*Id.* ¶¶ 1, 8.) Ultimately, after further discussions in February and March of this year, the parties concluded that the issues could not be resolved, and negotiations ceased. (*Id.* ¶ 9.) This led to Plaintiff filing a new complaint on March 26, 2014—just less than one year after the Eighth Circuit affirmed dismissal (on March 28, 2013) of the earlier *Gomes* action.[1] (*See* Complaint, ECF No. 1.)

---

[1] Plaintiff's counsel noted Plaintiff's position that the Missouri savings statute (Mo. Rev. Stat. § 516.230) may apply to this case and provide for a one-year time limitation for re-filing of the action after the date that the Eighth Circuit Court of Appeals affirmed this Court's dismissal of his earlier action. (Atkinson Decl. ¶ 4.)

5

### D. A Committee Has Been Formed to Evaluate Plaintiff's Demand

Shortly after Plaintiff filed his new complaint, the Board took steps to investigate his demand. (Olson Decl. ¶ 4.) On April 21, 2014, the Board appointed the Committee to fully investigate Plaintiffs' demand in order to make a recommendation to the Board as to whether ACWMF's best interests would be served by pursuing this action on behalf of the Fund. (*Id.*) The Committee is comprised of Jan M. Lewis and Stephen E. Yates, neither of whom is a defendant in this action. (*Id.*) The Committee members are in the process of interviewing and retaining counsel to assist in their evaluation of Plaintiff's demand. (*Id.* ¶ 5.) Given the complex facts at issue in this action, the number of witnesses that need to be interviewed, the numerous causes of action alleged against the many named defendants, and the complexities of the legal issues involved, the Committee's investigation will likely take several months. Therefore, a stay until mid-September 2014 is appropriate.

### E. Plaintiff Has Refused to Agree to a Stay of Proceedings.

Defendants' counsel met and conferred with Plaintiff's counsel about a potential stay of proceedings pending the Committee's investigation. (Atkinson Decl. ¶ 10.) Plaintiff's counsel advised that Plaintiff would not agree to such a stay. (*Id.*)

### III. ARGUMENT

#### A. Maryland Law Governs Issues Related to ACWMF's Corporate Governance.

The U.S. Supreme Court established long ago that "[c]orporations are creatures of state law, and it is state law which is the font of corporate directors' powers." *Burks v. Lasker,* 441 U.S. 471, 478 (1979) (citation omitted). Accordingly, federal courts should apply the law of the state of incorporation to issues of corporate governance, such as matters relating to directors' rights to control derivative litigation. *Id.* at 486; *see also Kamen v. Kemper Fin. Servs. Inc.,* 500

6

U.S. 90, 99 (1991) (the law of the state of incorporation governs substantive corporate issues in shareholder derivative action).

ACWMF is incorporated in Maryland (Compl. ¶ 36), which means Maryland law governs the internal affairs of the Fund, including ACWMF's response to Plaintiff's demand. Maryland courts, in turn, have routinely looked to Delaware's body of corporate law when there is no applicable Maryland law on point. *Kramer v. Liberty Prop. Trust*, 968 A.2d 120, 132-34 (Md. 2009) (noting the lack of applicable Maryland corporate law on point and holding that "because the Delaware courts have gained a reputation for their expertise in matters of corporate law, we deem decisions of the Delaware Supreme Court and Court of Chancery to be highly persuasive"); *Hudson v. Prime Retail, Inc.*, No. 24-C-03-5806, 2004 WL 1982383, at *13 (Md. Cir. Ct. Apr. 1, 2004) ("Because of the paucity of Maryland law on the subject[,] the parties direct the Court's attention to Delaware's well-developed corporate law, so the Court will rely primarily on that body of law . . ."); *Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*, No. 05-cv-0841, 2005 WL 2989343, at *3 (D. Md. Nov. 3, 2005) ("With respect to corporate governance issues, Maryland courts often look to Delaware case law. Accordingly this Court[] . . . will make reference to Delaware law in the absence of applicable Maryland law."). As such, this Court should resolve this motion under Maryland law to the extent possible, while looking to Delaware law for guidance when there is no applicable Maryland law on point.

**B.    The Committee and Board Are Entitled to Manage this Derivative Action**

Maryland law is clear that directors, and not shareholders, manage the business and legal affairs of a corporation. *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 422 (Md. 2009). A board of directors' managerial power is derived from Maryland General Corporation and

7

Associations Code § 2–401(a)[2] and includes the power and authority to make decisions regarding corporate litigation. *Werbowsky v. Collomb*, 766 A.2d 123, 133 (Md. 2001). Such control is particularly appropriate in derivative litigation because, unlike a claim brought by a plaintiff on his own behalf to enforce a personal right, a derivative claim is brought *on behalf of* a corporation. Indeed, the Fund—not the individual shareholder plaintiff—is the real plaintiff here. *Id.* (citing 13 William Meade Fletcher, et al, Cyclopedia of the Law of Private Corporations, § 5941.10 (1995 Rev. Vol.)). In this action, all of the claims asserted are derivative in nature. (Compl. ¶ 34.) Therefore, ACWMF is the real party in interest, not Plaintiff, and any claims that exist belong to ACWMF.

Maryland law is also clear that "the corporate power to institute litigation and the control of any litigation to which the corporation becomes a party rests with the directors." *Werbowsky*, 766 A.2d at 133 ("the corporate power to institute litigation and the control of any litigation to which the corporation becomes a party rests with the directors."). In circumstances such as this, where Plaintiff made a demand on the Board, the Board retains the power to make the final decision as to how to respond to Plaintiff's demand, and the Board may thus form a committee to consider the demand and to make a recommendation. *See Boland Trane Assocs. v. Boland*, No. 273284-V, 2012 Md. Cir. Ct. LEXIS 2, at *3-4 (Md. Cir. Ct. Jun. 6, 2012) (when a plaintiff makes a demand, the board "may choose to act as a whole in reviewing a stockholder's demand or it may appoint a special litigation committee to investigate the facts underlying a demand and make a report and recommendation to the independent and disinterested members of the board."); *Werbowsky*, 766 A.2d at 144 (directors responding to a demand "may choose to seek the advice of a committee of independent directors, which has become a common practice. . . .").

---

[2] Section 2-401(a) states that "[t]he business and affairs of a corporation shall be managed under the direction of a board of directors."

Therefore, in this instance, the Board was well within its powers when it formed the Committee to investigate and make a recommendation with respect to Plaintiff's demand.

### C. Well-Established Law Requires that All Proceedings Be Stayed Pending the Committee's Investigation

Courts in derivative actions routinely stay discovery and other proceedings while the board and any committee appointed to consider the demand conduct their investigation. Indeed, once the committee is formed, "it is a *foregone conclusion* that such a stay must be granted." *Kaplan v. Wyatt*, 484 A.2d 501, 510 (Del. Ch. 1984) (emphasis added); *see also St. Clair Shores Gen. Employees Retirement Sys. v. Eibeler,* No. 06 Civ 688*,* 2006 WL 2849783, at *3, (S.D.N.Y. Oct. 4, 2006) ("the propriety of a stay is *presumed* under Delaware law") (emphasis added); *In re Oracle Corp. Derivative Litig.,* 808 A.2d 1206, 1211 (Del. Ch. 2002) (acknowledging the court's "duty" to stay derivative actions pending investigation by the committee); *In re InfoUSA, Inc. Shareholders Litig.*, Civ. A. No. 1956, 2008 WL 762482, *3 (Del. Ch. Mar. 17, 2008) (such stays are "almost invariably" granted under Delaware law); *Katell v. Morgan Stanley Group, Inc.,* Civ. A. No. 12343, 1993 WL 390525, at *804 (Del. Ch. Sept. 27, 1993) ("Delaware law *requires* that all proceedings in the action be stayed pending the Committee's investigation") (emphasis added); *Abbey v. Computer & Commc'ns Tech. Corp.,* 457 A.2d 368 (Del. Ch. 1983) (applying Delaware law and staying derivative action pending investigation by the committee).

Moreover, the Fund does not need to meet any particular burden to establish that a stay is appropriate. *St. Clair,* 2006 WL 2849783, at *3 (applying Delaware law and holding that the committee "need not meet any special burden of proof before a stay of derivative proceedings is warranted."). This presumption in favor of a stay exists because "the derivative plaintiff should not be permitted to intermeddle or act coextensively with the independent arm of the board of directors . . . ." *Pompeo v. Hefner,* Civ. A. Nos. 6806, 6872, 1983 WL 20284, at *2 (Del. Ch.

Mar. 23, 1983). If a stay is not granted to allow the Committee to investigate Plaintiff's claims, "the inherent right of the board of directors to control and look to the well-being of the corporation in the first instance, collapses." *Kaplan,* 484 A.2d at 510.

Federal courts considering whether to stay an action pending a board's or a committee's investigation should follow these state law authorities, because "the law governing the circumstances in which a board's ability to control corporation litigation is substantive and not procedural." *Oracle*, 808 A.2d at 1215-16; *see also St. Clair,* 2006 WL 2849783, at *9 (applying Delaware law and "grant[ing] the [committee]'s motion to stay this litigation in its entirety"); *Moradi v. Adelson,* No. 2:11-cv-00490, 2012 WL 3687576, at *2, 5 (D. Nev. Aug. 27, 2012) (applying Delaware law and granting motion for stay pending the committee's investigation); *In re Take-Two Interactive Software, Inc. Derivative Litig.*, No. 1:06 Civ. 05279, 2007 WL 1875660, at *2 (S.D.N.Y. June 29, 2007) (same); *Rudolph v. Cummins*, Civ. A. No. H-06-2671, 2007 WL 1189632, at *3 (S.D. Tex. Apr. 19, 2007) (same).

### D. Plaintiff Cannot Show the Extraordinary Circumstances Necessary to Overcome the Strong Presumption in Favor of a Stay.

Courts require plaintiffs to show extraordinary circumstances in order to deny a stay of proceedings. *See, e.g., Strougo ex rel. The Brazil Fund, Inc. v. Padegs,* 986 F. Supp. 812, 815 (S.D.N.Y. 1997) (applying Delaware law and requiring plaintiff to show "extraordinary" circumstances to overcome the presumption of a stay); *St. Clair,* 2006 WL 2849783, at *3 (applying Delaware law and finding no showing by plaintiff of such "unusual circumstances" that would warrant denial of a stay).

Plaintiff cannot point to any such extraordinary circumstances. Here, Plaintiff made a demand on the Board, the parties attempted to negotiate the proposed Tolling and Linkage Agreement, and the Committee was formed shortly after those negotiations fell through.

10

Plaintiff may point to the amount of time that elapsed between his demand on the Board and the formation of the Committee. But such an argument would ignore Plaintiff's role in the negotiations for the proposed Tolling and Linkage Agreement that caused ACWMF to delay formation the Committee. Moreover, Courts have rejected similar arguments that a committee was formed "too late." *See In re InfoUSA,* 2008 WL 762482, at *2 ("[T]hat the committee was somehow formed 'too late' . . . does not in any way explain why [the company] cannot act through [a committee].").[3]

In any case, the Committee was formed shortly after those negotiations ended, and its investigation is now underway. Neither Maryland nor Delaware courts have established bright line rules as to how soon such a committee must be formed after a plaintiff's demand, because each circumstance is different. As one Delaware court explained, "[t]here can be no precise rule as to how much time a Board must be given to respond to a demand." *Allison ex rel. General Motors Corp. v. General Motors Corp.*, 604 F. Supp. 1106, 1117 (D. Del. 1985). Moreover, courts have routinely permitted lengthy delays as necessary under the circumstances. *See Mozes ex rel. Gen. Elec. Co. v. Welch*, 638 F. Supp. 215, 220 (D. Conn. 1986) (permitting an eight month delay of the investigation); *Gaines v. Haughton*, 645 F.2d 761, 767 (9th Cir. 1981) (permitting a fourteen month delay of the investigation); *Byers v. Baxter*, 69 A.D.2d 343, 346 (N.Y. App. Div. 1979) (the committee's investigation lasted nine months). Here, given the negotiations on the proposed Tolling and Linkage Agreement, which could have saved the Fund, Plaintiff, and the Court significant cost if the parties had been able to reach agreement, the

---

[3] Likewise, Plaintiff may argue that the Board improperly retained the ultimate decision-making authority to maintain or dismiss this action to the Committee, rather than delegate that authority to the Committee. But that argument is also without merit. *See Moradi*, 2012 WL 3687576, at *3 ("T]he relative power of the [committee] vis-à-vis the Board to make critical decisions regarding the decision to proceed with a shareholder derivative action is of no significant import" in determining whether a stay is appropriate).

11

Fund's delay was eminently reasonable.

### E. The Stay Should Include a Stay of Discovery.

A stay of the proceedings should apply to any discovery. A stay of discovery will allow the parties to avoid the kind of duplicative and wasteful efforts that result when the committee and a plaintiff are seeking the same documents, witness testimony, and other evidence. Indeed, the Delaware Court of Chancery has explained:

> [I]t would seem that such an independent committee, once appointed, should be afforded a reasonable time to carry out its function. It would likewise seem reasonable to hold normal discovery and other matters in abeyance during this interval. If a derivative plaintiff were to be permitted to depose corporate officers and directors and to demand the production of corporate documents, etc. at the same time that a duly authorized litigation committee was investigating whether or not it would be in the best interests of the corporation to permit the suit to go forward, the very justification for the creating of the litigation committee in the first place might well be subverted.

*Abbey,* 457 A.2d at 375-76 (staying discovery and noting the need to avoid "simultaneous discovery of the same persons and materials" by both the committee and plaintiff); *Sutherland v. Sutherland*, Civ. A. No. 2399, 2008 WL 571253, at *1 (Del. Ch. Feb. 14, 2008) (noting that a stay was granted to "permit the [committee] to do its work without the interference that would be caused by the simultaneous conduct of discovery by the plaintiff"). This logic applies here, because the Committee will be collecting and analyzing many of the same documents, witness testimony, and other evidence that plaintiff would seek in discovery. It is therefore important to stay all proceedings, including discovery, so as not to "subvert" the "very justification for the creating" the Committee. *Abbey,* 457 A.2d at 375-76.

### F. A Stay Will Benefit the Fund.

A stay here will provide substantial benefits to Fund. First, a stay will preserve the Board's right to control the prosecution of derivative litigation. Second, a stay will save the Fund from the financial expense and distraction to business that would be caused by needless,

12

duplicative discovery. Third, both the Fund and this Court may benefit by avoiding protracted litigation, possibly including a costly and lengthy trial on the merits, if the Committee decides that the litigation should be dismissed or settled. And, finally, if the Committee and the Board decide that the litigation is worth pursuing, it can do so in the manner and methods it chooses. In short, a stay of these proceedings will serve the best interests of the Fund and its shareholders.

### G. A Stay Until a September Status Conference Is Reasonable.

A stay should be long enough to ensure that the Committee has a reasonable time to conduct a thorough and disinterested investigation without being so long as to chill the derivative suit. *See Abbey,* 457 A.2d at 375. No formula exists for what is a reasonable amount of time for a stay, but it is clear that a committee must make "an objective and thorough investigation" before determining the best course of action for the company. *Zapata Corp. v. Maldonado,* 430 A.2d 779, 788 (Del. 1981); *see also Charal Inv. Co., Inc. v. Rockefeller*, Civ. A. No. 14397, 1995 WL 684869, *3 (Del. Ch. Nov. 7, 1995) ("[N]o formula exists by which the Court may determine if a 'reasonable' investigation period has elapsed. But it is clear that the Special Committee has a duty to conduct 'an objective and thorough investigation . . .'"). Thus, the duration of the stay should relate to the nature and complexity of the derivative claims asserted, because the nature of the alleged wrongs will naturally have a bearing on the extent of the investigation to be made. *Kaplan,* 484 A.2d at 510; *see also Pompeo,* 1983 WL 20284, at *3; *Abbey,* 457 A.2d at 376.

In some instances, courts have stayed derivative actions for an unspecified period of time. *See Oracle,* 808 A.2d at 1216 (proceedings stayed "until further order of the court"); *Abbey,* 457 A.2d at 376 (motion to stay granted; parties to submit form of order). One federal court observed that "[a] review of cases reveals that courts generally allow [committees] between six and ten months to investigate and report on pending derivative actions." *Silverstein v. Larson,*

13

No. Civ.04-3450, 2005 WL 435241, at *3 (D. Minn. 2005) (granting a six-month stay to allow a committee eight months to complete its investigation). In *Katell,* the court granted a stay of five months where the lawsuit charged breaches of fiduciary duty relating to two transactions. *Katell,* 1993 WL 390525, at *804. In *St. Clair*, the court granted a stay of 150 days where the lawsuit alleged two episodes of insider trading and three allegedly false proxy statements. *St. Clair,* 2006 WL 2849783, at *1-2, 9.

Here, ACWMF seeks a stay until September 2014, before holding a status conference, which would allow the Committee a total of approximately four months to make significant progress in, and hopefully conclude, its investigation. Such a modest stay is reasonable here, where Plaintiff's allegations are even more complex than those in *Katell* and *St. Clair*. Indeed, Plaintiff makes two claims under RICO (Compl. ¶¶ 185-97), one claim of breach of fiduciary duty (*id.* ¶¶ 198-202), one claim of negligence (*id.* ¶¶ 203-07), one claim of corporate waste (*id.* ¶¶ 208-14), and one claim of breach of contract (*id.* ¶¶ 215-18). Given the complexity of the factual and legal issues here, a stay of these proceedings until September 2014 is reasonable.

## IV. CONCLUSION

For the foregoing reasons, ACWMF respectfully requests that this Court stay the derivative action until a convenient date in September 2014 for a status conference that would allow the parties—and this Court—to assess the Committee's progress.

Dated: May 19, 2014

Respectfully submitted,

BRYAN CAVE LLP

By: /s/ W. Perry Brandt
W. Perry Brandt    MO Bar. #28292
1200 Main Street, Suite 3500
Kansas City, MO 64105
(816) 374-3200
(816) 374-3300 (Fax)

14

perry.brandt@bryancave.com

And

Gordon C. Atkinson (*pro hac vice* application forthcoming)
Benjamin H. Kleine (*pro hac vice* application forthcoming)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111-5800

Attorneys for defendants American Century Companies, Inc., American Century Global Investment Management, Inc., James E. Stowers, Jr., James E. Stowers, III, Jonathan S. Thomas, William M. Lyons, Enrique Chang, Mark Kopinski, and Brian Brady

And

BERKOWITZ OLIVER WILLIAMS SHAW & EISENBRANDT LLP

By: /s/ Kurt D. Williams
Kurt D. Williams     MO Bar # 36957
Nick J. Kurt    MO Bar # 52216
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone: 816-627-0215
Facsimile: 816-561-1888
Email: kwilliams@berkowitzoliver.com

And

Steuart H. Thomsen (*pro hac vice* application forthcoming)
SUTHERLAND ASBILL & BRENNAN LLP
700 Sixth Street, NW, Suite 700
Washington, DC 20001
Telephone: 202-383-0166
Facsimile: 202-637-3593
Email: steuart.thomsen@sutherland.com

Attorneys for Defendants Thomas A. Brown, Andrea C. Hall, Donald H. Pratt, Gale E. Sayers, M. Jeannine Strandjord, Timothy S. Webster, and Nominal Defendant American Century World Mutual Funds, Inc., doing business as American Century International Discovery Fund

107144196

15